UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Josie Hatuey**, <br><br>    Plaintiff, <br><br> v. <br><br> **IC System, Inc.**, <br><br>    Defendant. | Case No. 1:16-cv-12542-DPW |

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Request for a Stay under Federal Rule 56(d)**

   Plaintiff, Josie Hatuey, through undersigned counsel, submits the following memorandum of law in opposition to Defendant IC System, Inc.'s motion for summary judgment:

## I.     Introduction

   The defendant, IC System, Inc., brings this motion requesting summary judgment. However, reality of the case is that the motion is a continuation of an ongoing discovery dispute. After months of resisting routine discovery requests, culminating in a still-pending motion to compel, ICS has decided that having engineered an incomplete and disputed record, it can now ask the Court to use that record to end the case. We argue that to the extent that the evidence available is complete and undisputed, it leaves several open questions for the jury, but more importantly, that the record in this case remains open, and ICS should not be allowed to benefit from its obstinacy. Hatuey therefore respectfully asks the Court to either dismiss the motion for summary judgment for lack of a genuine issue of material fact, or in the alternative, to stay this motion under Federal Rule of Civil Procedure 56(d) to allow the Magistrate Judge to decide the pending motion to compel and to conduct additional limited discovery.

1

**II.     Factual background and procedural history**

Sometime before 2015, Plaintiff Josie Hatuey obtained a new cellular telephone number. See Exhibit A, First Page of Subpoenaed Call Records, and Docket Entry No. 1, Complaint, at Paragraph 12. At some point around September 2015, Hatuey started getting repeated telephone calls from a company called "IC System" to a stranger named "Brian O'Neill." See Exhibit B, Transcript of Deposition of Josie Hatuey at 14:6 to 15:9, 16:19 to 16:21. Finding these calls to this mystery person annoying, Hatuey told the caller that they had a wrong number and asked that they stop. See id. at 16:4 to 16:10. The callers acknowledged this request and said they would take him off their dialing list. See id. at 17:3 to 17:18.

Despite this, the calls kept flowing in every week if not every day. See id. at 17:3 to 17:18. The calls would sometimes come in twos, one call after another in succession; he would get these paired calls multiple times in a week. See Exhibit B at 22:7 to 22:18. Each time, Hatuey would repeat the same mantra: you have the wrong number, do not call me. See id. at 17:3 to 17:7. Eventually, Hatuey found the calls from this "IC System" intolerable, and filed this suit.

Hatuey's complaint alleges two discrete violations. First, he alleges that because IC System called him frequently despite knowing that he did not owe any debts it was assigned to collect, IC System violated Sections 1692d and 1692d(5) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a *et seq*. See Docket Entry No. 1 at Paragraphs 26-28. Second, he alleges that it made these calls with an automatic telephone dialing system, contrary to the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii). See Docket Entry No. 1 at Paragraphs 29-35.

To substantiate his allegations, Hatuey sought a seemingly-imposing but actually rather modest number of documents and audio recordings from ICS in discovery. See Docket Entry No. 38, Plaintiff's Motion to Compel, at Paragraph 2, and Exhibit C, Declaration of Joseph C. Hoeffel,

at Paragraph 4. Hatuey also sought to depose ICS through its designated corporate representative. See Docket Entry No. 38 at Paragraphs 5 and 10-11. However, ICS resisted discovery, and for months the parties attempted to resolve the discovery issues without substantive court involvement. See Docket Entry No. 38 at Paragraphs 2-11, and Exhibit C at Paragraphs 7-8. However, by the end of September 2017, counsel for Hatuey determined that the conflict was irresolvable, and moved to compel production of responsive documents on September 27. See Docket Entry No. 38.

ICS responded to this motion to compel by submitting heavily redacted documents. See Docket Entry No. 42, Plaintiff's Reply In Support of Motion to Compel, and Exhibit C at Paragraph 9. These redactions were extensive enough, and ICS's explanation for the redactions was confusing enough, that Hatuey's counsel could not in good conscience deem them sufficient to respond to the discovery requests. See id. The Court therefore set the motion to compel for oral argument, which was held before Magistrate Judge Boal on November 15, 2017. See Docket Entries No. 45 (setting hearing) and 53 (noting that hearing had been held).

After oral argument, Magistrate Judge Boal ordered ICS to produce the unredacted documents in camera. See Docket Entry No. 54 (stating that ICS had provided those documents). Her review of the unredacted documents is still pending. See Docket Report. Despite this, ICS filed this motion for summary judgment, without waiting for the resolution of the motion to compel to close the record. See Docket Entry No. 55.

Hatuey submits that there remain extensive issues of material fact in this action, precluding summary judgment. Moreover, Hatuey submits that because the motion to compel is still pending, the record in this matter remains open, and he cannot present facts essential to justifying his opposition to ICS's motion. Hatuey therefore requests that the Court either deny the motion, defer

considering the motion until after Magistrate Judge Boal rules on the motion to compel, or stay this matter to allow enough time for the parties to complete discovery.

### III.  Standard of review

Summary judgment is only proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a dispute of material fact exists or is genuine, the court must believe the evidence of the party not seeking summary judgment and draw all inferences from the evidence in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

Therefore, a party seeking summary judgment must show by reference to the pleadings, admissions, answers to interrogatories, depositions, and affidavits that there are no material facts truly in dispute in the case. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Only after the moving party satisfies this initial burden must the non-moving party present specific evidence that there remains a genuine issue for trial. See Anderson, 477 U.S. at 256. At summary judgment, the opposing the motion for summary judgment is entitled to have their allegations taken as true, to receive the benefit of the doubt when their assertions conflict with those of the movant and to have inferences from the underlying facts drawn in their favor. See Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F. 2d 1358, 1362-63 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993).

However, in some cases, a party opposing summary judgment may need evidence not in its control to show that an issue of material fact remains genuinely in dispute. In such cases, a party may seek relief under Federal Rule of Civil Procedure 56(d) to seek dismissal of the summary-judgment motion or a stay of the motion until the evidence can be secured. This is because "a district court is under a duty to ensure that an opposing party has been given a reasonable

opportunity to compile an evidentiary record before ruling on a motion for summary judgment." Allstate Ins. Co. v. Cent. Indem. Co., 2009 WL 3646291 at *3 (E.D. Pa. Oct. 29, 2009). Accordingly, the Federal Rules provide that courts should stay a pending summary judgment motion and provide a short period of additional discovery upon application of the opposing party where he or she could not obtain necessary discovery in time. Shelton v. Bledsoe, 775 F.3d 554, 565-566 (3d Cir. 2015); see also Ward v. U.S., 471 F.2d 667, 669 (3d Cir. 1973).

As a practical matter this standard is very low, and the party opposing summary judgment can meet it by showing that discovery is outstanding, it acted in good faith, and the requested information is material to the outcome of the case. Sames v. Gable, 732 F.2d 49, 51-52 (3d Cir. 1984). The Plaintiff need not file a separate motion to assert Rule 56(d), but may plead it in the opposition to summary judgment with a supporting affidavit laying out "what information is sought; how, if disclosed, it would preclude summary judgment; and why it has not been previously obtained." Bledsoe at 568; see also Jones v. Secord, 684 F.3d 1, 5-6 (1st Cir. 2012) (implying that when there is an outstanding discovery dispute, a party opposing summary judgment who raises Rule 56(d) in a timely manner should be granted appropriate relief under that rule).

### IV. Argument

#### A. There remain genuine issues of material fact whether ICS violated Sections 1692d and 1692d(5) of the FDCPA

ICS first argues that it is entitled to summary judgment on Hatuey's FDCPA claim because the volume and pattern of calls from ICS to Hatuey starting in September 2015 was harassing. This assertion is without foundation in the record. Nothing in the record supplies a precise and reliable count of calls from ICS to Hatuey. Outside the pleadings, the only evidence of the volume of calls

from ICS to Hatuey is his testimony at deposition, in which he states that calls were very frequent—sometimes multiple times per week. See Exhibit B at 17:3 to 17:18 and 22:7 to 22:18. Moreover, Hatuey's testimony establishes that he was not the person ICS sought to reach, and that he told ICS they had a wrong number. 14:6 to 15:9, 16:19 to 16:21. A reasonable jury could, based on this testimony, find ICS liable under the FDCPA. The only other evidence currently in the record, the redacted account notes ICS provides, is inconclusive.

The FDCPA exists "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." See Jerman v. Carlisle, McNelli, Rini, Kramer & Ulrich LPA, 559 U.S. 753, 577 (2010). Because Congress perceived the problem of abusive debt collection practices to be widespread, it deliberately made the FDCPA "an extraordinarily broad statute." See Frey v. Gangwish, 970 F.2d 1516, 1521 (6th Cir. 1992). Therefore, the FDCPA "must be enforced as written, even when eminently sensible exceptions are proposed in the face of an innocent and/or de minimis violation." See Williams v. Javitch, Block & Rathbone, LLP, 480 F.Supp. 2d 1016, 1021 (S.D. Ohio 2007), citing Frey, 970 F.2d at 1521. Moreover, as a remedial statute, the FDCPA must be construed liberally in favor of the consumer. See Sprinkle v. SB&C Ltd., 472 F.Supp. 2d 1235 (W.D. Wash. 2006); see also Clark v. Capital Credit & Collection Services, Inc., 460 F. 3d 1162 (9th Cir. 2006) (the remedial nature of the FDCPA requires that courts interpret it liberally); and Johnson v. Riddle, 305 F. 3d 1107 (10th Cir. 2002) ("Because the FDCPA … is a remedial statute, it should be construed liberally in favor of the consumer").

Section 1692d of the FDCPA prohibits debt collectors from engaging in any conduct "the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt." See 15 U.S.C. §1692d. Section 1692d then sets forth various actions a debt

collector may take that constitute a violation of this Section. For example, section 1692d(5) of the FDCPA prohibits debt collectors "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." See 15 U.S.C. §1692d(5).

There is a near-consensus that a debt collector can violate the statute through sheer call volume, as Section 1692d(5) lists as a violation "causing a telephone to ring or engaging any in person in a telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." See § 1692d(5); see also Carr v. NCO Financial Systems, Inc., 2011 WL 6371899, at *2 (E.D. Pa. Dec. 20, 2011); Valentine v. Brock & Scott, PLLC, 2010 WL 1727681, at *4 (D.S.C. April 26, 2010) (holding eleven (11) calls in nineteen (19) days constituted harassment); and Brown v. Hosto & Buchan, PLLC, 748 F.Supp.2d 847, 852 (W.D. Tenn. 2010) (holding seventeen (17) calls in one (1) month constituted harassment). Moreover, when (as here) the consumer being contacted did not owe the debt, and the consumer has told the debt collector that it is contacting him or her in error, a volume of calls that might be acceptable to an actual debtor can become harassing, abusive, oppressive, and outrageous. See Meadows v. Franklin Collection Serv., Inc., 417 Fed. Appx. 230, 233-34 (11th Cir. 2011) (holding that call volume of about 300 calls over about two and a half years could constitute harassment because the consumer did not owe the debt, no longer lived with the debtor, and had informed the debt collector of these facts).

Moreover, when faced with a claim of harassment under the FDCPA, courts overwhelmingly defer to a jury to determine whether the defendant acted with the intent to harass. See e.g. Regan v. Law Offices of Edwin A. Abrahamsen & Assoc., P.C., 2009 WL 4396299, *6 (E.D. Pa. Dec. 1, 2009); Jeter v. Credit Bureau, 760 F.2d 1168, 1179 (11th Cir. 1985); Ortega v.

Collectors Training Inst. Of Ill., Inc., 2011 WL 241948, *9 (S.D. Fl. 2011); Sierra Rubin & Debski, P.A., 2010 WL 4384216, *2 (S.D. Fl. Oct. 28, 2010). This is even true when, as in this case, the only evidence that the debt collector called frequently enough to harass is the consumer's own testimony. See, e.g., Pratt v. CMRE, 2012 WL 86957, *2-3 (E.D. Mich. Jan. 11, 2012) (the court held that an issue of fact as to the harassing nature of the defendant's calls was present, preventing summary judgment, where the defendant's call log showed only 17 calls but the plaintiff, who was unable to obtain his telephone records, testified that he received an estimated 65-70 calls); Bramble v. Lyons Doughty & Veldhuis, PA, C.A. No. 11-867-RGA (D. Del. Aug. 7, 2012) (material dispute of fact created by plaintiff's affidavit that disputed generally the number of calls the plaintiff received); and May v. Asset Acceptance, LLC, C.A. 2013 WL 1337173, *11 (N.Y.W.D. Mar. 29, 2013) (finding dispute of fact and jury question regarding volume of calls even where plaintiff could not identify the number of calls he received).

None of the six cases ICS cites as examples says that a debt collector can never violate the FDCPA solely by placing too many calls. See Lashbrook v. Portfolio Recovery Assocs. LLC, 2013 WL 4604281 (E.D. Mich. Aug. 29, 2013); Tye v. LJ Ross Assocs., 2013 WL 424765 (E.D. Mich. February 4, 2013); Chavious v. CBE Group, Inc., 2012 WL 113509 (E.D.N.Y. January 13, 2012); Shand-Pistilli v. Prof'l Account Servs., Inc., 2011 WL 2415142 (E.D. Pa. June 16, 2011); and Kenny v. Mercantile Adjustment Bureau, LLC, 2013 WL 1844782 (W.D.N.Y. May 1, 2013). Such a conclusion would negate the clear language of the Act. Instead, in each case, the court found that in the particular case, the volume of calls was very low or not quite high enough to warrant holding it harassing on its own. See Lashbrook, 2013 WL 4604281 at *5-*6 (call volume of 120 calls in one year—about one call every three days—not sufficient to establish intent to harass because consumer admitted debt and had not created factual dispute about other conduct);

Tye, 2013 WL 424765 at *4-*5 (consumer did not create issue of material fact that debt collector placed multiple calls in one day or that she had asked not to be called); Chavious, 2012 WL 113509 (36 calls in 58 days, all at least two hours apart, not sufficient to establish harassment without proof consumer asked not to be contacted); Shand-Pistilli, 2011 WL 2415142 at *1, *5-*6 (10 calls in 73 days—or less than one per week on average, and only once on consecutive days—insufficient to establish intent to harass); and Kenny v. Mercantile Adjustment Bureau, LLC 2013 WL 1855782 at *3 (14 calls over five months insufficient to establish intent to harass, especially where debt collector contacted consumer on a large number of separate accounts).

In this case, Hatuey has testified that ICS called him frequently between September 2015 and December 2016. See Exhibit B at 17:3 to 17:18.  On at least some occasions, ICS called Hatuey twice in quick succession multiple times in the same week. See id. at 22:7 to 22:18. He does not owe any debts ICS could be collecting. See id. at 21:16 to 21:24. Hatuey has further testified that every time he picked up the phone to answer ICS, he told them that they had a wrong number, and that they should stop calling his phone to reach this Brian O'Neill person. See id. at 17:3 to 17:7. A reasonable jury could conclude that because it called Hatuey frequently despite knowing that Hatuey did not owe the debt, ICS's calls constituted harassment.

ICS claims that its account notes show that it promptly notated that they had a wrong number and stopped calling the first time Hatuey told them. However, these account notes are heavily redacted. See Exhibit D, ICS Account Notes. Thus far, because of the outstanding discovery dispute, which is in large part about the same account notes, Hatuey has been unable to depose ICS about what these account notes mean. See Exhibit C at Paragraph 10. Even setting aside the redactions, the account notes are not self-explanatory, and Hatuey would need to depose ICS to understand the notes. See id.

However, even if the Court credits ICS's claim that the account notes are evidence that it called Hatuey less than he remembers, this is still insufficient to grant ICS summary judgment. At summary judgment, the moving party has the burden of establishing the absence of a genuine issue of material fact. That means that "if there is any evidence in the record, from any source, from which a reasonable inference in the respondent's favor may be drawn, the moving party cannot obtain a summary judgment . . ." See In re: Japanese Electronic Products Antitrust Litigation, 723 F.2d 238, 258 (3d Cir. 1983), *reversed on other grounds*, citing to Coastal States Gas Corp. v. Department of Energy, 644 F.2d 969, 979 (3d Cir. 1981). The "burden then is insurmountable." See id.

Moreover, the court must view the evidence in the light most favorable to the non-movant when ruling on a motion for summary judgment. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing the motion for summary judgment is entitled to have their allegations taken as true, to receive the benefit of the doubt when their assertions conflict with those of the movant and to have inferences from the underlying facts drawn in their favor. See Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F. 2d 1358, 1362-63 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993).

The court, at summary judgment, does not consider which side has the stronger case or weigh the relative strength of evidence or compare different kinds of evidence. The Supreme Court has instructed: "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." Pugliese v. Adult Servs. Unlimited, Inc., 2012 WL 2049819 at 4 (M.D. Pa. June 6, 2012) (citing Anderson, 477 U.S. at 255). Testimony alone may also create a genuine dispute of material fact; documentary evidence is not required. Grant v. Winik, 948 F.Supp. 2d 480, 490 (E.D. Pa. 2013) (citing Big Apple BMW

at 1363). Indeed, a genuine issue of material fact exists whenever there is conflicting admissible evidence from discovery, depositions, or affidavits (including those submitted in reply to a summary judgment motion) on facts that could affect the outcome of the suit under the governing law. See Anderson at 248-249; Miller v. Glenn Miller Prod., Inc., 454 F.3d 975, 987 (9th Cir. 2006).

Therefore, when considering a motion for summary judgment with two competing sets of evidence, the court must decide whether a factfinder could rationally find either set of evidence more believable than the other. This is true even when one set of evidence is documentary and the other is testimony, so long as there is enough information for "a rational factfinder to credit" the testimony. Johnson v. Metlife Bank, N.A., 883 F.Supp.2d 542, 549 (E.D. Pa. 2012). A rational factfinder can generally believe that documents are incomplete, incorrect, or misleading in the face of contradictory testimony in practically all circumstances; the only limited exception is when there is an incontrovertibly accurate and complete record like a videotape of an incident from start to finish. See Patterson v. City of Wildwood, 354 Fed. Appx. 695, 697-698 (3d Cir. 2009).

ICS' account notes are redacted; they are thus incomplete, even if they are accurate. Moreover, again, Hatuey has not had any opportunity to depose ICS to determine how ICS generates and maintains its account notes; the accuracy of those records will thus remain in dispute until such a deposition is held. Moreover, even if ICS notes were not redacted and a deposition were held, those could leave open questions about both completeness and accuracy depending on what they reveal. Therefore, faced with the record in this case, the Court would have to weigh the relatively credibility of the evidence before it to decide whether to believe ICS or Hatuey. See e.g., Patterson, 354 Fed. Appx. at 697-98. But there is no substitute for actually observing a witness to determine his credibility. See, e.g., Renovator's Supply, Inc. v. Sovereign Bank, 892 N.E.2d 777, 788 (Mass. App. 2008). The "cold record" of a transcript is not enough to make that decision. See

id.; see also State v. Locurto, 724 A.2d 234, 240 (N.J. 1999) ("credibility findings . . . are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record").

This is why at summary judgment, for all kinds of evidence, "where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." See Big Apple BMW, 974 F. 2d at 1362-63 (citing to Country Floors, Inc. v. A Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1991)). Therefore, "If there is any evidence in the record that could reasonably support a [factfinder's] verdict for the nonmoving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315-316 (2d Cir. 2006). It is Hatuey who opposes summary disposition in this case. The deposition testimony he presents as evidence bears at least some of the marks of credibility; it could reasonably support a finding for him. The Court must therefore balance the credibility of Hatuey's testimony against the credibility of ICS's records.

Hatuey puts forward that even if ICS's records were unredacted and fully explained, the Court would still need to weigh the credibility of those records against the credibility of Hatuey's testimony, barring summary judgment on the merits. In the alternative, however, Hatuey asks that the Court stay this motion for summary judgment until Magistrate Judge Boal decides the pending motion to compel. Again, Rule 56(d) can afford relief to a nonmoving party when there is an open discovery dispute. See e.g., Jones, 684 F.3d at 5-6 (implying this is a proper use of the rule); E.E.O.C. v. Tex. Roadhouse, Inc., 2014 WL 7448524, at *2-*4 (D. Mass. November 17, 2014); and Haney v. Adams, 2011 WL 3678142 at *1-*2 (E.D. Ca. Aug. 22, 2011) (both applying the rule in this way).

Per the attached declaration, Hatuey specifically asked ICS in discovery for the account notes and account file on which ICS was calling. See Exhibit C at Paragraph 5. The complete and unredacted account notes would shed light on the number of times ICS called Hatuey, which is crucial to establishing whether the volume of calls was harassing. This information thus addresses one of ICS's claimed bases for summary judgment. Finally, because of this ongoing dispute, Hatuey has neither the account notes nor an adequate explanation of how to interpret them. Therefore, if the Court does not believe that incomplete records warrant denying summary judgment, it should at least stay decision until discovery is done.

    B. <u>There remain genuine issues of material fact whether ICS violated the TCPA</u>

ICS next argues that its calls to Hatuey did not violate the TCPA because the system it used to place calls to Hatuey, the LiveVox HCI software package, is not an automatic telephone dialing system under the TCPA. The TCPA generally forbids placing any call to any cellular telephone using an automatic telephone dialing system. 47 U.S.C. § 227(b)(1)(A)(iii). ICS argues that LiveVox HCI is not an ATDS because it requires human intervention to place calls. However, the record produced in discovery does not show whether ICS used the system in a way not requiring human intervention, and therefore the Court must dismiss or stay this motion under Rule 56(d) to allow the parties to complete discovery.

For years, the FCC and the courts have defined an ATDS to include any equipment that either (1) has the capacity to dial calls from stored lists without human intervention at the point of dialing whether or not it is actually used to do so when a particular call is placed; OR (2) has the capacity to dial calls from stored lists without meaningful human intervention as determined on a case by case basis. <u>Meyer v. Portfolio Recovery Associates</u>, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing <u>In re Rules and Regulations Implementing the Tel. Consumer Protect. Act of 1991</u>, 18 FCC

Rcd. 14-014, 140931-14093 (July 3, 2003) (2003 FCC Order); Horowitz v. GC Servs. Ltd. P'ship, 2016 WL 7188238 at *14 (S.D. Cal. Dec. 12, 2016); Keim v. ADF Midatlantic, LLC, 2015 WL 11713593 at *5 (S.D. Fla. Nov. 10, 2015). In 2015, the FCC clarified that the term "capacity" means what it says and does not include an unwritten qualifier to make it "present capacity." In re Rules and Regulations Implementing the Tel. Consumer Protect. Act of 1991 30 F.C.C. Rcd. 7691, 7970-75 (July 10, 2015) (2015 FCC Order). It likewise clarified that the choice of the word "intervention" in "human intervention" was not an accident. Id. at 7974-76.

To "intervene" means to "come in or between by way of hindrance or modification" or "to interfere with the outcome or course especially of a condition or process." Intervene (v.d.), Merriam-Webster Dictionary. Retrieved from www.merriam-webster.com/dictionary/intervene, December 20, 2017. Therefore mere human activity is not enough, rather the FCC clarified that, "How the human intervention element applies to a particular piece of equipment is specific to each individual piece of equipment, based on how the equipment functions and depends on human intervention, and is therefore a case-by-case determination." 2015 FCC Order, 30 F.C.C. Rcd. at 7975.

Based on this guidance, the question for the Court on ICS's request for summary judgment is this: Does LiveVox HCI, as used by ICS to call Hatuey, have the capacity to dial telephone numbers from a stored list without human intervention? ICS's production does not answer that question.

In other cases where the undersigned counsel has opposed summary judgment requests by callers using the LiveVox HCI system, they have received information about how the LiveVox dialer system obtains lists of accounts to be called, how it assigns them to be called, and then places the calls. See Exhibit E, Memorandum of Law in Ruffrano v. HSBC Finance Corp., at 16-17, and

Exhibit F, Plaintiff's Counterstatement of Fact in Ruffrano v. HSBC Finance Corp, at Page 1 and at Paragraphs 50-55 (based on depositions of persons qualified to speak to the dialer and how the defendant used it). Counsel has also been able to get information about the way in which the human intervention that LiveVox HCI allegedly requires occurs. See Exhibit E at 17, and Exhibit F at Paragraph 58. Counsel has also obtained information about how LiveVox HCI interacts with other dialing systems and can be used in conjunction with them. See Exhibit E at 17 and Exhibit F at 67.

Each item outlined above is crucial to establishing whether LiveVox HCI (1) dials numbers from a stored list and (2) does so without human intervention. ICS's production to Hatuey contains no significant information about any of these matters. It produced a few vague documents that suggested but did not conclusively prove that the way it used LiveVox HCI was an ATDS. See Exhibit C at Paragraph 10. Unless ICS produces responsive documents, or allows Hatuey to depose it about the dialing system, Hatuey cannot present facts essential to justify an intelligible opposition to summary judgment. Therefore, as to the TCPA claim, Hatuey humbly asks the Court to deny the motion for summary judgment, stay or defer the motion to allow the parties to complete discovery, or otherwise relieve him from responding to the demand for summary judgment.

### V.     Conclusion

By filing this motion for summary judgment while a motion to compel was still pending, ICS has made it impossible for Hatuey to respond to the motion. He therefore asks the Court to deny the motion for summary judgment, or, barring that, defer or stay judgment until all discovery disputes have been resolved.

Respectfully submitted,

Dated: December 20, 2017                    By: *s/ Craig Thor Kimmel*
                                            Craig Thor Kimmel, Esq.
                                            Kimmel & Silverman, P.C.

30 East Butler Pike
Ambler, PA 19002
Phone: 215-540-8888
Facsimile: 877-788-2864
Email: kimmel@creditlaw.com

## Certificate of Service

The undersigned hereby certifies that on December 20, 2017 a copy of the foregoing document was served electronically via the Court's Electronic Case Filing (ECF) system:

Sean P. Flynn (Admitted Pro Hac Vice)
sflynn@gordonrees.com
Gordon & Rees LLP
2211 Michelson Drive, Suite 400
Irvine, CA 92612
949-255-6950
Fax: 949-474-2060
sflynn@gordonrees.com


Jay S. Gregory
Gordon & Rees, LLP
21 Custom House Street
5th Floor
Boston, MA 02110
857-263-2000
Fax: 857-264-2836
Email: jgregory@gordonrees.com

*s/ Craig Thor Kimmel*
Craig Thor Kimmel, Esq.